IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 25, 2012 Session

**STATE OF TENNESSEE v. GABRIEL DEMON WILLIAMS**

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 273387   Rebecca J. Stern, Judge**

**No. E2011-02092-CCA-R3-CD - Filed July 20, 2012**

The Defendant, Gabriel Demon Williams, pled guilty to aggravated burglary, and the trial court sentenced him to five years of split confinement, with eleven months and twenty-nine days to be served in jail followed by intensive probation. The Defendant's probation officer filed a probation violation warrant that alleged that the Defendant had violated the terms of his probation by being arrested for aggravated assault and driving on a suspended license. After a hearing, the trial court revoked the Defendant's probation and ordered the Defendant to serve the balance of his sentence in confinement. On appeal, the Defendant contends that the trial court improperly considered hearsay evidence during the revocation hearing and that its revocation order is contrary to the evidence. After reviewing the record, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Robin Ruben Flores, Chattanooga, Tennessee, for the appellant, Gabriel Demon Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William H. Cox, III, District Attorney General; Brian Finlay and Matthew Rogers, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts and Background**

The Defendant was originally indicted for conspiracy to commit aggravated robbery, aggravated burglary, and attempted aggravated robbery. In accordance with a plea agreement, he pled guilty to aggravated burglary. During the plea submission hearing, the State informed the trial court that, had the case gone to trial, it would have proven:

> [O]n July 9, 2009, a Charles Collins contacted the Chattanooga Police Department to report that there were – he called 911, actually, to report there were some people in his house. He'd seen a SUV pull up in his driveway, saw three people get out, two of them entered his home. Mr. Collins retrieved a firearm and as the two people were coming down the hall he fired a shot at them. They fled in a maroon colored SUV. The police responded and very close to Mr. Collins' residence they found four suspects in the car, [the Defendant] being one of them. And [the Defendant] generally fitting the description of one of the parties who had entered Mr. Collins' residence without permission.

After a sentencing hearing on April 25, 2011, the trial court imposed a five-year sentence, with the Defendant to serve eleven months and twenty-nine days in confinement followed by intensive probation.

On July 19, 2011, the Defendant's probation officer filed a probation violation report in which he alleged that the Defendant had violated his probation by not following the law and by engaging in assaultive, abusive, threatening, or intimidating behavior. The warrant alleged the following facts:

> On 04/25/2011, in Division II of Hamilton County Criminal Court, [the Defendant] was convicted of Aggravated Burglary (Occupied Habita[t]). Subject was sentenced five years in the Tennessee Department of Correction, suspended to five years Supervised Probation. Special Conditions: Balance of sentence on Intensive Probation, jail credit.
>
> On 06/15/2011 Subject reported for Group Case Opening. On 07/01/2011 Subject reported to this Officer for his first scheduled appointment. On 07/08/2011 Subject obtained a new Assault charge. Subject made this Officer aware of the incident on 07/15/2011. Due to the nature of the charge, a Violation Report must be filed per policy of the Board of Probation and Parole.

An addendum to the affidavit in support of the probation violation warrant alleged that on July 9, 2011, the Defendant was also charged for driving on a suspended license. The addendum alleged the Defendant violated his probation by being arrested at 12:00 a.m. and also by being out past his 6:00 p.m. curfew.

The trial court held a hearing on the probation violation warrant, wherein the parties presented the following evidence: Shemika Hart testified that she was twenty-two years old and the mother of two children, ages four months and one year. The Defendant was the father of one of her children. Hart said that she was currently in custody for violating her probation for theft and assault convictions but that, before being taken into custody, she lived in an apartment with her two children. After the Defendant was released from jail on June 6, 2011, he stayed in her apartment with her and her children.

Hart testified that the Defendant had been charged with aggravated assault against her. She explained that, on June 20, 2011, she was at her mother's house. She was in a car with her cousin, her cousin's friend, and her children when the Defendant rode by in another vehicle and saw her. The Defendant, she said, was obviously angry and exited the vehicle with a crowbar. Hart exited her car to "defend" herself, and the Defendant beat her with a crowbar. She estimated that he hit her ten times with both his fists and with the crowbar. Hart said she told the Defendant that she was calling the police, and he responded, "Bitch, I got you." Hart recalled that her children, who watched the beating, were crying as she called 911. Hart did not wait for the ambulance to arrive; rather, her cousin took her to a nearby hospital. Hart said, at the hospital, she received a CAT scan and the doctors treated her for a broken nose, a fractured face, and stitched some of her wounds.

On cross-examination, Hart testified that she had previously been convicted of theft under $500 and had been sentenced to probation, which she subsequently violated. She said that after the Defendant was released from custody, she bought a car and put it in his name. She explained that she was on "the run" because she had a warrant for her arrest based upon a probation violation. After the Defendant was in custody for this case, she took the car. She was arrested and pled guilty to stealing the car from the Defendant. She maintained, however, that the car belonged to both of them.

Hart denied that she made up her testimony about the aggravated assault because she was angry with the Defendant for refusing to live with her.

Michelina Ralston, the Defendant's probation officer, testified that she met with him twice, the first time on June 15, 2011, during probation orientation, and the second time on July 1, 2011. Officer Ralston testified that she filed a probation violation report based upon the Defendant being charged for an aggravated assault that occurred on July 20, 2011. The

officer testified that she had since amended the probation violation report to include an additional charge of driving on a suspended license that occurred on July 9, 2011. Officer Ralston testified that she became aware that the Defendant had been charged with driving on a suspended license after he was stopped at 12:00 a.m., which was after his 6:00 p.m. curfew.

On cross-examination, Officer Ralston testified that the incident report, which was entered into evidence, showed that the Defendant was actually stopped at 10:45 p.m. The officer testified that, before becoming a probation officer, she worked with the Defendant at a Sonic restaurant. She denied that the two had difficulty working together at Sonic.

Aquita Jones testified that the Defendant was her boyfriend and that the two began their relationship in July 2011. She said that, as a result of her relationship with the Defendant, she and Hart had negative encounters. She explained that on two separate occasions while she was in the Defendant's car, Hart had "pulled up on her." One time, Hart pulled up next to Jones as Jones parked the Defendant's car. As Jones exited the vehicle, Hart "snatched the keys [to the car] out [of her] hand." Hart then got into the car and drove away.

Jones described another incident where she was walking on a street and Hart pulled a car next to her, jumped out, and told her that the reason that the Defendant was incarcerated was because of Hart. Jones said Hart told her that the Defendant had hit her with a crowbar, but Jones did not see any injuries to Hart.

Tracy Williams, the Defendant's mother, testified that the Defendant moved into her house upon his release from custody in June. Williams said Hart called her on numerous occasions "cursing [her] out," wanting to know the Defendant's location. On cross-examination, Williams testified that her son did not have a valid driver's license. She said that she did not know how many children the Defendant had, but she thought he had four or five. This did not include Hart's child, and Williams said that Hart did not have a blood test to prove that the Defendant was the father.

The Defendant testified that when he was released from jail he got eye glasses and a car so he could get to and from his probation meetings. He said he also applied for food stamps and attempted to obtain adult education training. He said he went by himself to purchase a car, contrary to Hart's testimony. The Defendant testified that Hart repeatedly threatened him, saying that if he did not do as she asked, when she asked him to take her baby to the hospital or bring her food, she would have him "locked up." The Defendant said he was living with his mother after his release from jail, and he denied ever beating Hart with a crowbar. He also denied hitting her in the face.

-4-

On cross-examination, the Defendant testified that he had been convicted of robbery "numerous" times. He said that he did not have a valid driver's license, but he purchased a car anyway because obtaining a driver's license was "in the making." He could not recount the last time he was employed but said that obtaining employment was "in progress" at the time of his arrest. The Defendant denied that Hart called him when she wanted support for their child, saying, "No, she support herself. She just want me to do stuff when she want me to do it. And I told her I ain't messing with her no more." The Defendant denied that he saw Hart on July 20, 2011.

Based upon this evidence, the trial court found:

> I believed [Hart]. I believe that [the Defendant] assaulted her on July 20th and that she went to the hospital as a result of the assault. I find that he was driving after curfew, driving on [a] revoked [license]. The petition to revoke is sustained. His sentence is ordered into execution. He'll be given credit for time served.

It is from this judgment the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court improperly considered hearsay evidence during the revocation hearing and that its revocation order is contrary to the evidence. The State counters that there is ample evidence in the record to support the trial court's findings.

In Tennessee, the procedure for revocation of probation is covered in Tennessee Code Annotated section 40-35-311. The statute provides as follows:

> Whenever it comes to the attention of the trial judge that any defendant, who has been released upon suspension of sentence, has been guilty of any breach of the laws of this State or has violated the conditions of probation, the trial judge shall have the power to cause to be issued under such trial judge's hand a warrant for the arrest of such defendant as in any other criminal case. Regardless of whether the defendant is on probation for a misdemeanor or a felony, or whether the warrant is issued by a general sessions court judge or the judge of a court of record, such warrant may be executed by a probation officer or any peace officer of the county in which the probationer is found.

T.C.A. § 40-35-311(a) (2010).

The essential question facing the trial court in a probation revocation proceeding is whether the trial court's determination will subserve the ends of justice and the best interest of both the public and the probationer. *See Hooper v. State*, 297 S.W.2d 78, 81 (Tenn. 1956). When a trial court determines by a preponderance of the evidence that a probationer has violated the conditions of his or her probation, the trial court has the authority to revoke probation. T.C.A. § 40-35-311(e) (2010). Upon finding that the defendant has violated the conditions of probation, the trial court may revoke the probation and either: (1) order incarceration; (2) order the original probationary period to commence anew; or (3) extend the remaining probationary period for up to two additional years. *State v. Hunter*, 1 S.W.3d 643, 644 (Tenn. 1999); *see* T.C.A. §§ 40-35-308, -310, -311 (2010). The defendant has the right to appeal the revocation of his probation and entry of his original sentence. T.C.A. § 40-35-311(e)(2) (2010). After finding a violation, the trial court is vested with the statutory authority to "revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered . . . ." T.C.A. § 40-35-311(e)(1) (2010); *accord Hunter*, 1 S.W.3d at 646 (holding that the trial court retains the discretionary authority to order the defendant to serve his or her original sentence in confinement). Furthermore, when probation is revoked, the trial court may order "the original judgment so rendered to be in full force and effect from the date of the revocation of the suspension . . . ." T.C.A. § 40-35-310(a) (2010).

The decision to revoke probation is within the sound discretion of the trial judge. *State v. Kendrick*, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005); *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). This Court will uphold a trial court's judgment to revoke probation unless the trial court abused its discretion. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). To find an abuse of discretion in a probation revocation case, the record must be void of any substantial evidence that would support the trial court's decision that a violation of the conditions of probation occurred. *Id.*; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980).

In the case presently before us, the Defendant contends that the trial court's ruling that the evidence showed that he had committed aggravated assault against Hart was "not logical." We disagree. The evidence showed that the State charged the Defendant with the aggravated assault of Hart on July 20, 2011. Hart testified that the Defendant approached her while she was in a car and hit her approximately ten times with his fists and a crowbar. Hart said that she went to the hospital, where she was treated for having a broken nose and a fractured face. She said she also received stitches. Hart said police officers came to the hospital and that she described the incident to them. The Defendant testified that he did not see Hart on July 20, 2011. The trial court accredited Hart's testimony. We conclude that the trial court did not abuse its discretion when it revoked the Defendant's probation.

The Defendant next contends that the trial court considered only hearsay when determining that the Defendant had violated his probation by driving on a suspended license past his curfew. The Defendant's probation officer testified that the Defendant had been charged with driving on a suspended license and that this occurred after the Defendant's curfew of 6:00 p.m. The Defendant offered into evidence the incident report and citation from this incident, which showed the time of the offense was 10:45 p.m. The incident report indicated that the Defendant was stopped by police for turning in front of oncoming traffic with tires "squealing" and traveling at a high rate of speed. The Defendant admitted at the probation revocation hearing that he did not have a valid driver's license. We conclude that the trial court properly found that the Defendant had violated his probation by driving on a suspended license and that he was out past his 6:00 p.m. curfew. The Defendant is not entitled to relief.

### III. Conclusion

Based on the above mentioned reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE